Argued and submitted September 20, 1982, affirmed January 12, reconsideration denied March 11, petition for review allowed May 3, 1983 (294 Or 792) See 296 Or 718, 681 P2d 776 (1984)

WINN,
*Appellant,*
*v.*
GILROY,
*Defendant,*
WINN,
*Respondent.*

(No. 120015, CA A23680)

WINN,
*Appellant,*
GILROY,
*Defendant,*
WINN,
*Respondent.*

(No. 120016, CA A23681)

(Cases Consolidated)

656 P2d 386

Paul J. DeMuniz, Salem, argued the cause for appellant. With him on the brief was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

J. Philip Parks, Salem, argued the cause for respondent. With him on the brief was Parks and Bauer, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

Van Hoomissen, J., concurring.

## RICHARDSON, P. J.

Plaintiff appeals from a trial court judgment order dismissing consolidated wrongful death actions on the ground that defendant Winn, decedents' father, was immune from liability under the parental immunity doctrine. The issue is whether the allegations of plaintiff's complaints state a cause of action. We affirm.

Plaintiff, decedents' mother, and defendant Winn were husband and wife. At the time of the accident they had separated and were living apart. Decedents, ages 4 and 5, lived with their mother. On December 15, 1979, decedents were visiting their father. Plaintiff's complaints allege that defendant Winn had been drinking when he decided to take his daughters by car from Salem to Stayton and that he drove at an excessive speed, failed to keep a proper lookout and eventually lost control of his vehicle, colliding head-on with an automobile driven by defendant-decedent Gilroy. The complaints also allege that Winn was intoxicated at the time and that the two children were killed as a result of the accident.[1]

Plaintiff's amended complaints fail to state a cause of action against defendant Winn under *Chaffin v. Chaffin,* 239 Or 374, 397 P2d 771 (1964); *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960); and *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445 (1950).

Plaintiff urges that we abrogate the parental immunity doctrine. Plaintiff's brief presents a cogent argument for abrogation, at least to the extent of the claims presented here. Principled obedience to the *Cowgill-Chaffin* rule need not prevent awareness that it may be ripe for reconsideration. The concurring opinion sets forth a comprehensive analysis of the bases of the parental immunity doctrine and makes a cogent argument for its abolition. However, we are not free to disregard controlling precedents.

Affirmed.

---

[1] After the trial court dismissed her original complaints, plaintiff amended her allegations to state that defendant and plaintiff, his wife, were separated at the time of the accident.

## VAN HOOMISSEN, J., concurring.

I concur in the result reached by the majority under the binding precedent of *Cowgill Adm'r. v. Boock Adm'r.,* 189 Or 282, 218 P2d 445 (1950), and *Chaffin v. Chaffin,* 239 Or 374, 397 P2d 771 (1964). However, at least to the extent of the claims presented here, that precedent should be reexamined.

The doctrine of parental immunity has relatively modern roots. No record exists of a decision at early English common law involving a personal tort action based on negligence between parent and child, although no authority suggests that there was a prohibition against such actions. *See* McCurdy, *Torts Between Persons in Domestic Relations,* 43 Harv L Rev 1030, 1059 (1930). In *Hewlett v. George,* 68 Miss 703, 9 So 885 (1891), the court held that a minor child could not maintain an action against her mother for false imprisonment in an asylum. The decision was based on the court's assumption that "* * * the peace of society * * * and the sound public policy, designed to subserve the repose of families and the best interests of society" forbid intra-family tort actions. The court cited no authority for its decision but, rather, relied on the lack of contrary authority.

In *McKelvey v. McKelvey,* 111 Tenn 388, 77 SW 664 (1903), the court denied a child's action against her father for allowing the child's stepmother to mistreat her. The *McKelvey* court said, citing *Hewlett,* that a common law rule denied a civil remedy in such a case. In *Roller v. Roller,* 37 Wash 242, 79 P 788 (1905), the court held that a child could not recover from her father who had raped her. Acknowledging the absurdity of claiming parental immunity as a protector of family harmony in a case that involved rape, the court nonetheless feared that allowing recovery for so heinous a tort would allow recovery for even those minor torts that arise in normal parent-child relationships. An injured child could look only to the criminal law for protection; she was not entitled to civil damages.

These three cases constitute the "Great Trilogy" on which the American rule of parent-child tort immunity is based. Comment, *Tort Action Between Members of the Family — Husband & Wife — Parent & Child,* 26 Mo L

Rev 152, 182 (1961). Although the issue did not arise frequently, from 1930 to the early 1960s almost every jurisdiction that faced the issue of a personal tort negligently inflicted by a parent on a child embraced the doctrine. 26 Mo L Rev at 183.

Although favored by the courts, the doctrine was not without its critics. Critical examinations of the policy include Prosser, Handbook of the Law of Torts, § 122 (4th ed 1979), and 1 Harper and James, The Law of Torts, § 8.11 (1956). The dissent in *Hastings v. Hastings,* 33 NJ 247, 163 A2d 147, 151 (1960), lists 44 articles and texts written as of that date that condemned the doctrine. Numerous articles written over the past 20 years call for at least partial abrogation.[1]

Traditionally, five reasons are advanced for retaining immunity: (1) the danger of fraud or collusion between family members seeking a recovery from an insurance company; (2) the "family exchequer" theory — the depletion of family funds and the detriment to other members of

---

[1] *See, e.g.,* Note, *Parental Immunity—The First District Declines to Adopt the Doctrine of Parental Immunity,* 10 Fla St U L Rev 185 (1982); Note, *Parental Immunity—Merrick v. Sutterlin,* 56 Wash L Rev 319 (1981); Note, *Personal Injuries: Parental Liability and Automobile Negligence,* 20 Washburn L J 460 (1981); Note, *Turner v. Turner: Abrogation of the Parental Immunity Doctrine,* 27 S D L Rev 171 (1981); Berman, *Time to Abolish Parent-Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family,* 4 Nova L J 25 (1980); Note, *Parent-Child Tort Immunity—No Immunity for the Noncustodial Parent,* 45 Mo L Rev 186 (1980); Comment, *Negligent Parental Supervision as Grounds for Contribution in Tort: The Case for Minimal Parental Liability,* 12 U C Davis L Rev 828 (1979); Note, *Intrafamilial Tort Immunity in New Jersey: Dismantling the Barrier to Personal Injury Litigation,* 10 Rut-Cam L J 661, 679 (1979); Note, *Intrafamily Tort Immunity in Virginia: A Doctrine in Decline,* W & M L Rev 273 (1979); Note, *Parental Immunity—Unemancipated Minor Child of Divorced Parents May Sue Noncustodial Parent,* 1979 Wash U L Q 1191 (1979); Comment, *Emancipation from the Family Immunity Doctrine,* 15 Am Bus L J 305 (1978); Note, *Parent-Child Tort Immunity in Oklahoma: Some Considerations for Abandoning the Total Immunity Shield,* 12 Tulsa L J 545 (1977); Comment, *The Demise of Parent-Child Tort Immunity,* 12 Will L J 605 (1976); Comment, *The "Reasonable Parent" Standard: An Alternative to Parent-Child Tort Immunity,* 47 U Colo L Rev 795 (1976); Note, *The Parent-Child Tort Immunity Law in Massachusetts,* 12 New Eng L Rev 309, 331 (1976); Comment, *Intrafamily Tort Liability — A Situation of Confused Disparity,* 5 Cumber-Sam L Rev 273 (1974); *Parental Immunity: The Case for Abrogation of Parental Immunity in Florida,* 25 U Fla L Rev 794 (1973); Comment, *Parent-Child Tort Immunity: A Rule in Need of Change,* 27 U Miami L Rev 191 (1972); Comment, *Parental Immunity: California's Answer,* 8 Idaho L Rev 179, 187 (1971); *Child v. Parent: Erosion of the Immunity Rule,* 19 Hastings L J 201 (1967); Comment, *Tort Action Between Members of the Family—Husband & Wife—Parent & Child,* 26 Mo L Rev 152 (1961).

the family if one member is allowed to recover from a parent; (3) analogy to the denial of a claim between husband and wife; (4) preservation of domestic tranquility and harmony; and (5) retention of traditional parental discretion in carrying out the parental duties of discipline and care. Other reasons advanced in favor of the rule include: (1) if the child dies, the parent may inherit any money the child recovers in such an action; (2) the child would otherwise be permitted to bring a "stale" action on reaching majority (based on statutes that toll the applicable statute of limitation during the minority of a plaintiff); and (3) sovereign family government demands immunity. These arguments, however, have been generally dismissed as "too unsubstantial to be considered as more than mere makeweights." *Dunlap v. Dunlap,* 84 N H 352, 150 A 905 (1930); *Borst v. Borst,* 41 Wash 2d 642, 251 P2d 149 (1950).

Most of these traditional factors have little validity today, if they ever justified denying a remedy to an entire class of injured persons. As for the possibility of collusion between a parent and child to defraud an insurance company, of course the possibility exists, just as it does in every insured case. However, courts have not seen fit to deny, because of this possibility, actions between siblings, between an adult child and a parent, between two parents or between other relatives. I see no compelling reason to allow recovery in some of these cases but not against a parent in an action by a child. Other, more appropriate safeguards are available:

> " * * * Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct. We further must recognize that, under provisions ordinarily included in an insurance plicy, the insurance company has the right to disclaim liability when there is lack of cooperation with the insurance company on the part of the insured. Lack of cooperation may be found in inconsistent or contradictory statements by the insured or in collusion between the injured party and the insured which results in false statements to the company." *Nocktonick v. Nocktonick,* 227 Kan 758, 611 P2d 135, 142 (1980).

Furthermore, the child's interest in recovering far outweighs the possible threat of collusion.

"It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffective." *Klein v. Klein*, 58 Cal 2d 692, 26 Cal Rptr 102, 106 376 P2d 70, 73, (1962).

The "family exchequer" theory also lacks merit when examined against the realities of modern life. Children may sue their parents in actions based on contract or property, where no insurance likely exists, without fear of depletion of family resources. If insurance exists, denial of a cause of action is a more severe drain on family resources than would be recognition of a claim for relief. If a parent is insured, no actual monetary loss will result to the family if the parent is found negligent. Without access to insurance funds, however, the family must provide from its own funds for the injured child's medical bills and other expenses. Moreover, it is less likely that an action will be brought against a member of the family who does not have liability insurance or who is not already separated from the family unit. In such cases, depletion of family funds will not result. Professor James wrote in 1948:

"Recovery by the unemancipated minor child against his parent is almost uniformly denied for a variety of reasons which involve the integrity of the family unit and the family exchequer and the importance of parental discipline. But in truth, virtually no such suits are brought except where there is insurance. And where there is, none of the threats to the family exist at all." James, *Accident Liability Reconsidered: The Impact of Liability Insurance,* 57 Yale L J 549, 553 (1948).

The analogy drawn by some proponents of the doctrine between parent-child tort immunity and interspousal immunity is not well-based. Unlike interspousal immunity, no common law basis exists for the doctrine of parental immunity. Further, the bar against actions between spouses resulted from a common law fiction that a married couple had but one identity, and that a husband's assumption of his wife's property prohibited litigation

between them. No such relationship has ever been recognized between parent and child. *Borst v. Borst,* 41 Wash 2d 642, 251 P2d 149, 155 (1952). Obviously, this factor has little validity in those jurisdictions that have abolished interspousal tort immunity.

A more commonly advanced argument for barring suits between parent and child is to preserve and advance familial harmony. One may argue that if a suit is brought in the first place, familial harmony is already at risk. The primary disruption to harmonious family relationships is not the lawsuit brought for damages after the injury but the injury itself that results from the misconduct of a parent. *Falcos v. Pados,* 444 Pa 372, 282 A2d 351 (1971). Again, the dichotomy between a child's action in contract and an action in tort is apparent here. No more disruption occurs in a personal tort action than would occur in a contract action or a property action; yet, a child is universally allowed to bring the latter against his parent.

> "If [family harmony] were a valid socio-logical consideration, the Legislature could orchestrate even greater harmony by abolishing the statute giving the right to divorce." *Coffindaffer v. Coffindaffer,* ___ W Va ___, 244 SE2d 338, 342 (1978) (case abrogating interspousal immunity).

Denying a child access to the courts will not close an existing rift in intra-family relations.

The only traditional argument that is not immediately dismissible is the threat to parental authority and discipline. Almost all courts recognize that the parent-child relationship must be immune in some limited aspects from judicial inquiry and interference. The difficulties lie in determining what areas warrant examination in court and which are immune, and in devising a workable standard for the courts to apply when judging a parent's actions. Difficulty in molding a solution, however, does not justify allowing a parent to injure a child tortiously with impunity. Courts have attempted to mitigate injustice by carving exceptions from the general rule of immunity.[2]

---

[2] Exceptions include: actions based on tortious conduct while acting within the scope of employment or in a business activity, *see, e.g., Mi-Lady Cleaners v. McDaniel,* 235 Ala 469, 179 So 908 (1938); *Chase v. New Haven Waste Material*

In *Goller v. White,* 20 Wis 2d 402, 122 NW2d 193 (1963), the Wisconsin Supreme Court abrogated the parental tort immunity doctrine with two exceptions: (1) negligent acts involving exercises of parental authority and (2) negligent acts within the scope of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental service and other care. The need to protect the parents' right to perform their parental duties without judicial interference is at the heart of these exceptions. This approach has been criticized as resulting in a case-by-case determination of whether immunity will apply and as presenting "a real danger of arbitrary line-drawing." *Anderson v. Stream,* 295 NW2d 595 (Minn 1980) (rejecting *Goller* approach in favor of total abrogation).

California became the first jurisdiction to abrogate the doctrine completely. *Gibson v. Gibson,* 3 Cal 3d 914, 479 P2d 648, 652-53, 92 Cal Rptr 288 (1977). In its place, that court imposed a standard of an "ordinarily reasonable and prudent parent" under similar circumstances. 479 P2d at 653. Although followed by only a few jurisdictions, the *Gibson* approach has found favor with recent writers on the subject.[3]

---

Co., 111 Conn 377, 150 A 107 (1930); *Felderhoff v. Felderhoff,* 473 SW2d 928 (Tex 1971); while engaging in malicious or willful acts, *see, e.g., Cowgill v. Boock, supra, Nudd v. Matsoukas,* 7 Ill 2d 608, 131 NE2d 525 (1956); *Mahnke v. Moore,* 197 Md 61, 77 A2d 923 (1951); *Teramano v. Teramano,* 6 Ohio St 2d 117, 216 NE2d 375 (1966); suits by child against a parent's estate, *see, e.g., Barnwell v. Cordle,* 438 F2d 236 (5th Cir 1971); *Brennecke v. Kilpatrick,* 336 SW2d 68 (Mo 1960); *Capps v. Smith,* 263 NC 120, 139 SE2d 19 (1964); by an emancipated minor, *see, e.g., Wood v. Wood,* 135 Conn 280, 63 A2d 586 (1948); *Bulloch v. Bulloch,* 45 Ga App 1, 163 SE 708 (1932); *Glover v. Glover,* 44 Tenn App 712, 319 SW2d 238 (1958); against noncustodial parents; *see, e.g., Fugate v. Fugate,* 582 SW2d 663 (Mo 1979); *Bondurant v. Bondurant,* 386 So2d 705 (La App 1980).

[3] *See, e.g.,* Note, *Parental Immunity-Merrick v. Sutterlin,* 56 Wash L Rev 319, 336-40 (1981); Berman, *Time to Abolish Parent-Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family,* 4 Nova L J 25, 47 (1980); Note, *Parental Immunity-Unemancipated Minor Child of Divorced Parents May Sue Noncustodial Parent,* 1979 Wash U L Q 1191, 1197 (1979); Note, *Intrafamilial Tort Immunity in New Jersey: Dismantling the Barrier to Personal Injury Litigation,* 10 Rut-Cam L J 661, 679 (1979); Note, *The "Reasonable Parent" Standard: An Alternative to Parent-Child Tort Immunity,* 47 U Colo L Rev 795, 808 (1976); Note, *The Parent-Child Tort Immunity Law in Massachusetts,* 12 New Eng L Rev 309, 331 (1976); Comment, *Parental Immunity: The Case for Abrogation of Parental Immunity in Florida,* 25 U Fla L Rev 794, 801 (1973); Comment, *Parental Immunity: California's Answer,* 8 Idaho L Rev 179, 187 (1971).

In 1977, the American Law Institute adopted § 895G of the Restatement (Second) of Torts, which rejected the immunity from liability in torts between parent and child. However, it recognized a "privilege" that would absolve liability:

> " **§ 895G.** Parent and Child
>
> "(1)  A parent or child is not immune from tort liability to the other solely by reason of that relationship.
>
> "(2)  Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."

Comment *k* to that section discusses this privilege and the problem it presents:

> " * * * * *
>
> "The intimacies of family life also affect the determination of whether conduct is negligent or not. If the conduct giving rise to an injury does not grow directly out of the family relationship, the existence of negligence may be determined as if the parties were not related. A similar attitude is taken regarding the driving of an automobile on the street or highway; most of the cases abrogating the immunity have involved automobile accidents.
>
> "Conduct involving the exercise of parental authority or supervision is essential to the parent-child relationship. This is also true of the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training. Parental discretion is involved, and to say that the standard of a reasonable prudent parent is applied should be to recognize the existence of that discretion and thus to require that the conduct be palpably unreasonable in order to impose liability. Compare § 895D, Comment *e,* discussing the analogous problem in regard to the liability of a public officer.
>
> " * * * * * "

Cases involving injuries inflicted during the exercise of parental discretion or discipline continue to trouble courts, but in the years following the first inroad made in 1963 by *Goller v. White, supra,* twenty-nine jurisdictions have abrogated parental tort immunity, at least to the extent of the facts presented here, *i.e.,* tortious injury

inflicted on a child during the negligent operation of a motor vehicle by the child's parent.[4]

The actual operation of a motor vehicle, the act that most frequently gives rise to a claim of parental liability, is arguably not an exercise of a parental prerogative concerning the care or discipline of the child. The duty of care a driver owes a passenger should not change just because that passenger happens to be the driver's minor child. The existence of liability insurance, now required by ORS ch 486, and the absence of conduct involving the exercise of parental authority or supervision negate the traditional concerns that initially gave rise to the parental immunity doctrine. *Cessante ratione legis, cessat et ipsa lex. Cowgill v. Boock, supra,* 189 Or at 308.

---

[4] Seven states have abrogated the doctrine completely: California: *Gibson v. Gibson,* 3 Cal 3d 914, 479 P2d 648, 92 Cal Rptr 288 (1971); Hawaii: *Petersen v. City & County,* 51 Hawaii 484, 462 P2d 1007 (1969); New Hampshire: *Briere v. Briere,* 107 NH 432, 224 A2d 588 (1966); New York: *Gelbman v. Gelbman,* 23 NY2d 434, 245 NE2d 192, 297 NYS2d 529 (1969); Nevada: *Rupert v. Stienne,* 90 Nev 397, 528 P2d 1013 (1974); North Dakota: *Nuelle v. Wells,* 154 NW2d 364 (ND 1967); Pennsylvania: *Falco v. Pados,* 444 Pa 372, 282 A2d 351 (1971). Twenty-two other states have abrogated the doctrine in circumstances like those here: Alaska: *Hebel v. Hebel,* 435 P2d 8 (Alaska 1967); Arizona: *Streenz v. Streenz,* 106 Ariz 86, 471 P2d 282 (1970); Connecticut: Gen Stat § 52-572c (1981 Rev); Delaware: *Williams v. Williams,* 369 A2d 669 (Del 1976); Florida: *Ard v. Ard,* 414 So2d 1066 (Fla 1982); Iowa: *Turner v. Turner,* 304 NW2d 786 (Iowa 1981); Kansas: *Nocktonick v. Nocktonick,* 227 Kan 758, 611 P2d 135 (1980); Kentucky: *Rigdon v. Rigdon,* 465 SW2d 921 (Ky 1971); Maine: *Black v. Solmitz,* 409 A2d 634 (Me 1979); Massachusetts: *Sorensen v. Sorensen,* 369 Mass 350, 339 NE2d 907 (1975); Michigan: *Plumley v. Klein,* 388 Mich 1, 199 NW2d 169 (1972); Minnesota: *Anderson v. Stream,* 295 NW2d 595 (Minn 1980); Missouri: *Fugate v. Fugate,* 582 SW2d 663 (Mo 1979); New Jersey: *France v. APA Transport Corp.,* 56 N J 500, 267 A2d 490 (1970); New Mexico: *Guess v. Gulf Ins. Co.,* 96 NM 27, 627 P2d 869 (1981); North Carolina: *Snow v. Nixon,* 52 NC App 131, 277 SE2d 850 (1981); South Carolina: *Elam v. Elam,* 275 SC 132, 268 SE2d 109 (1980); Vermont: *Wood v. Wood,* 135 Vt 119, 370 A2d 191 (1977); Virginia: *Smith v. Kauffman,* 212 Va 181, 183 SE2d 190 (1971); Washington: *Merrick v. Sutterlin,* 93 Wash 2d 411, 610 P2d 891 (1980); West Virginia: *Lee v. Comer,* 224 SE2d 721 (W Va 1976); Wisconsin: *Goller v. White,* 20 Wis 2d 402, 122 NW2d 193 (1963).