Argued and submitted June 6, 1983, reversed and remanded to circuit court April 17, petition for rehearing denied May 22, 1984

WINN,
*Petitioner on Review,*

*v.*

GILROY,
*Defendant,*
WINN,
*Respondent on Review.*

(TC Nos. 120015, 120016;
CA Nos. A23680, A23681; SC 29330)
(Consolidated)
681 P2d 776

Paul J. DeMuniz, Salem, argued the cause and filed the petition for review. With him on the petition was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

J. Philip Parks, Salem, argued the cause and filed the response for respondent on review. With him on the response was Parks & Bauer, Salem.

Before Peterson, C. J., Linde, Campbell, Roberts, Carson and Jones, JJ.

LINDE, J.

## LINDE, J.

Petitioner is the personal representative of the estates of her two minor children who died in an automobile collision while traveling in an automobile driven by their father, defendant Steven A. Winn. She commenced wrongful death actions against both drivers, alleging that each was responsible for the collision by one or more of several specifications of negligent driving, as well as "wilful" driving while intoxicated. The Court of Appeals summarized the facts alleged in the complaint as follows:

> "Plaintiff, decedents' mother, and defendant Winn were husband and wife. At the time of the accident they had separated and were living apart. Decedents, ages 4 and 5, lived with their mother. On December 15, 1979, decedents were visiting their father. Plaintiff's complaints allege that defendant Winn had been drinking when he decided to take his daughters by car from Salem to Stayton and that he drove at an excessive speed, failed to keep a proper lookout and eventually lost control of his vehicle, colliding head-on with an automobile driven by defendant-decedent Gilroy. The complaints also allege that Winn was intoxicated at the time and that the two children were killed as a result of the accident."

61 Or App 243, 245, 656 P2d 386 (1983) (footnote omitted). The circuit court dismissed the complaints against the father on the ground that he was immune from liability for negligence toward his children, and the Court of Appeals affirmed. We allowed the petition for review to examine the tort law applicable to a parent's liability for injuries to a child under the circumstances alleged in the complaints. We hold that under those circumstances defendant Steven A. Winn was not immune from liability and therefore reverse the Court of Appeals and remand the case to the circuit court for further proceedings.

In affirming the dismissal of the complaints, the Court of Appeals followed this court's opinions in *Chaffin v. Chaffin,* 239 Or 374, 397 P2d 771 (1964) and *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445 (1950), each of which also dealt with actions for damages against a father whose negligent driving allegedly caused the death of a minor child riding with him. In those cases, the only two in which this court has considered the question, the majority opinions concluded that a minor child could sue a parent for "wilful"

torts, stating in dictum that a parent is immune from liability toward a minor child for injuries caused by the parent's negligence. The Court of Appeals, however, expressed its view that this broad doctrine of parental immunity might be ripe for reconsideration. *Winn v. Gilroy, supra,* 61 Or App at 245. In a concurring opinion, Judge Van Hoomissen reviewed the widespread criticism and rejection of the doctrine during the past 20 years and the arguments, which the majority opinion acknowledged to be "cogent," for abandoning the doctrine in its present form. 61 Or App at 246-253. For the reasons that follow, we agree with that view.

## I.

The origins and history of parental immunity summarized in Judge Van Hoomissen's opinion, the reasons stated for it by the courts that invented it, and the criticism leveled against it have been set forth in many judicial opinions and scholarly articles and need not be repeated at length here.[1] For present purposes, the narrower question concerns not the early development of the doctrine in other states but its treatment in this state.

The doctrine of a general parental immunity from tort liability to unemancipated minor children did not meet an enthusiastic reception when the question first reached this court in 1950 in *Cowgill, Adm'r v. Boock, Adm'r, supra.* Justice Belt cited sources indicating that parental immunity apparently was not part of the common law that was adopted before statehood in 1843, having been invented by the Mississippi Supreme Court in *Hewlett v. George,* 68 Miss 703, 9 So 885 (1891).[2] He described the question of immunity and its limits

---

[1] Hollister, *Parent-Child Immunity: A Doctrine In Search of Justification,* 50 Fordham L Rev 489 (1982); McCurdy, *Torts Between Parent and Child,* 5 Vill L Rev 521 (1966); Horne, *The Vestiges of Child-Parent Tort Immunity,* 6 U C D L Rev 195 (1973); Comment, *The Demise of Parent-Child Tort Immunity,* 12 Willamette L J 605 (1976).

[2] *Cowgill, Adm'r v. Boock, Adm'r, supra,* 189 Or at 295.

On the adoption of the common law, *See* Act of July 5, 1843, reprinted in Harris, History of the Oregon Code, 1 Or L Rev 129, 135 (1922); Act of June 27, 1844, Or Laws 1843-49, Art III, § 1 at 98-100.

An early case showing that at common law a child could sue a parent for a personal tort is *Ash v. Lady Ash* [1696] Comb 357, 90 Eng Rep 526 (daughter's action against mother for battery and false imprisonment). More recently, *Young v. Rankin* [1934] Sess Cas 499, allowed a child's recovery for injuries caused by his father's negligent

as one of "public policy." *Cowgill, Adm'r v. Boock, Adm'r, supra,* 189 Or at 293. He noted the early criticism of absolute parental immunity, including a dissent of Cardozo, Andrews, and Crane, JJ., to its adoption in New York, *Sorrentino v. Sorrentino,* 248 NY 626, 162 NE 551 (1928), and the qualified phrasing of the rule in other jurisdictions. 189 Or at 296-301. The *Cowgill* court then stated its conclusion in terms addressed more to what should be excluded from parental immunity than to adoption of the general concept itself:

> "After a careful consideration of the authorities, we think the general rule—so well established by the authorities—should be modified to allow an unemancipated minor child to maintain an action for damages against his parent for a wilful or malicious personal tort. The evidence in the instant action certainly shows that the decedent-father was guilty of wilful misconduct. Ordinary negligence or the doing of an unintentional wrong can not be the basis for such an action. To apply a hard and fast rule of nonliability to the facts in this case would, in our opinion, defeat justice and not subserve a sound public policy."

189 Or at 301.

The announced modification sufficed to affirm the judgment for the child's estate in that case. That was the holding. Strictly speaking, the acknowledgment of "the general rule" denying parental liability for ordinary negligence or the doing of an unintentional wrong was dictum. The court might have written instead that even if parental immunity from liability for ordinary negligent acts should be held to be the law in Oregon, it would not aid the defendant in the aggravated circumstances before the court. But what the court wrote was not unconsidered dictum, and it set the stage for what followed.

The court was divided, however, on the logic and the feasibility of the modified rule. Because the difference expressed by the concurring and dissenting opinions in *Cowgill* remain unresolved 34 years later, we review them here. In his concurrence, Justice Rossman wrote:

---

driving. This Scottish decision was followed by the Supreme Court of New Zealand, in *McCallion v. Dodd,* [1966] NZLR 710, after reviewing English and American authorities, including *Cowgill, Adm'r v. Boock, Adm'r, supra.* Parental immunity still is not a general doctrine in common law jurisdictions. Modern Commonwealth views and cases are summarized in Fleming, The Law of Torts 669 (5th ed 1977).

"When the rule of non-parental liability is applied in instances of injury inflicted while the parent was discharging his duties as a parent, the result of no liability is just and promotes a wholesome purpose. Thus, the parent should not be held liable for chastisement which he administered as head of the household; . . . Likewise, the father should not be suable by his child for an injury sustained through the disrepair of the home, even though the father was negligent. . . ."

"Immunity is accorded the parent, not because he is a parent, but because, as a parent, he pursues a course within his household which society exacts of him and which is beneficial to the state. Society expects parents to keep the home in order, to preserve within it domestic tranquility, to see to it that the children go to school and that they deport themselves properly in the neighborhood. The parental non-liability is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts."

*Cowgill, Adm'r v. Boock, Adm'r, supra,* 189 Or at 304-305. Justice Rossman would make the test of immunity whether the father's allegedly tortious act was done "in his capacity as parent" or "exercising a parental function," and he would hold that the father's making a child accompany him while driving a vehicle in an intoxicated condition "was outside the scope of his parental prerogatives." 189 Or at 307-308. Justice Latourette, who also concurred, added that to allow a child's action against a parent for misappropriation of the child's property but not for injury or death caused by the parent's drunken driving "would be placing 'property rights' over human rights." 189 Or at 309.

The dissenters' criticism was directed at the majority's choice of "wilful misconduct" for drawing a boundary to parental immunity. Justice Lusk, with whom Justice Bailey concurred, noted that "wilful" had been held to include "wanton" or "reckless" acts and acts of "gross negligence"; and he thought that such acts would not prove that "the security, tranquility and peace of the home have already been disrupted," if that was the reason for denying parental immunity. *Cowgill, Adm'r v. Boock, Adm'r, supra,* 189 Or at 309-311. Justice Brand, with whom Justice Bailey and Justice Lusk also concurred, thought that the majority might have rejected parental immunity entirely, but he criticized its compromise as "a nebulous middle position" which would make "court and

jury flounder about in a mass of uncertainty as to the difference between simple and gross negligence and attempt to determine when a wrong, neither malicious nor intentional nor merely negligent, constitutes an actionable wilful tort." 189 Or at 313-314. He also thought that the alternative test limiting immunity to acts done in "discharging a parental duty" would prove equally confusing. 189 Or at 314.

In short, the *Cowgill* court took parental tort immunity to be a "general rule," though the question was new to Oregon. What Justice Belt's opinion described as "a question of public policy" was not so much the existence of the rule as its modification in the case before the court. The actual decision held a father liable for damages for the death of his son as a result of the father's intoxicated and "wilfully" wrongful driving.

When the issue next reached the court in *Chaffin v. Chaffin, supra,* the debate focused on the meaning and adequacy of the word "wilful" to describe the kind of misconduct that would fall outside parental immunity. An examination of the briefs in *Chaffin* shows that the plaintiffs did not question the principle of parental immunity but argued that the allegations of their complaints should suffice to escape from that principle.[3] The court noted that both parties "recognized . . . that ordinary negligence will not pierce the cloak of parental immunity, nor will gross negligence" as previously defined by the court. 239 Or at 380. It phrased the question presented to be: "What greater negligence of a parent than gross will grant a cause of action to a child against a parent?" 239 Or at 381. The premise of immunity itself was not reconsidered.

The problem of adjectives defining degrees of fault beyond ordinary negligence had occupied the court's attention in *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960) and in *Falls v. Mortenson,* 207 Or 130, 295 P2d 182 (1956). When these cases were decided, "gross negligence" still was required by statute for a driver's liability toward a social guest. In *Falls v. Mortenson,* the court had reviewed the confusing usage of "wilful" sometimes to mean the same as "wanton" and sometimes to require a wrongful intent, and the court had

---

[3] *Chaffin v. Chaffin, supra* also involved spousal immunity, and one defendant's wife argued unsuccessfully that the court should overrule that doctrine. 239 Or at 390.

interpreted *Cowgill* to mean "wilful" in the sense of "wanton." 207 Or at 142-143, quoted in *Chaffin v. Chaffin, supra,* 239 Or at 383-385. But the *Chaffin* court noted that the word "wanton" itself "also partakes of several meanings." 239 Or at 385. After reviewing the several opinions in *Cowgill,* a majority of four members of the court in *Chaffin* reached the conclusion that

> "for a petition of a minor child to state a cause of action against a parent, even under the modified rule of *Cowgill v. Boock, supra,* the complaint must allege facts from which a conclusion can be drawn that the parent committed an act so cruel in its nature as to denote a wicked intent to cause injury to someone."

239 Or at 388. It then held that the facts alleged in that case did not meet that test.

Three members of the court did not agree. Justice Rossman stood by his concurring opinion in *Cowgill. Chaffin v. Chaffin, supra,* 239 Or at 391. Justice Sloan believed that problems arising out of possible recoveries by parents in wrongful death actions brought by their children's estates required legislative rather than judicial solutions, but if the court chose to draw a line, he believed that parental liability should not require intentional misconduct. *Id.* Justice O'Connell noted that the reasons assigned for the doctrine of parental immunity were widely regarded as unconvincing and absolute immunity had been rejected by at least one state. He proposed to abandon the doctrine in Oregon. 239 Or at 391-392.

Thus, prior Oregon cases on the subject of parent-child tort immunity consist of one decision holding a father liable under a "modified" rule of parental immunity and one decision rejecting liability in a case in which the parties had not questioned the premise of immunity itself but only the shortcomings of the standards of "wilful" or "wanton" conduct. Given this inconclusive background, we believe that the current status of the rule is open to further examination.

## II.

Shortly before *Chaffin v. Chaffin, supra,* as Justice O'Connell noted, the Wisconsin Supreme Court had reexamined and rejected the broad concept of parental tort immunity. *Goller v. White,* 20 Wis 2d 402, 122 NW2d 193 (1963).

The Wisconsin court questioned the old premise that parental immunity was required to preserve family harmony against the discord of litigation. It noted that such litigation was not barred for a child's property or contractual claims. The court observed that even in tort cases, other states had whittled away at parental immunity by exceptions and modifications, citing among other cases this court's decision in *Cowgill, Adm'r v. Boock, Adm'r, supra.* The *Goller* court then decided that the doctrine of parental immunity in negligence actions for damages for a child's personal injuries should be abrogated except in two situations: "(1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." 122 NW2d at 198.

In the years immediately following *Goller v. White* and *Chaffin v. Chaffin,* one state after another reexamined and rejected broad parental immunity from liability for negligence, finding that the doctrine could not logically be supported by any reason that had been advanced for it. New Hampshire came out against the broad rule in 1966, Alaska and North Dakota in 1967, Minnesota in 1968, New York in 1969, New Jersey, Arizona and Hawaii in 1970, California, Kentucky, Pennsylvania, Texas and Virginia in 1971, Michigan in 1972, Nevada in 1974, Massachusetts in 1975, Delaware and West Virginia in 1976, Vermont in 1977, Missouri and Maine in 1979, Washington, South Carolina and Kansas in 1980, Iowa in 1981, Florida in 1982, and Oklahoma in 1984.[4]

---

[4] *Briere v. Briere,* 107 NH 432, 224 A2d 588 (1966); *Hebel v. Hebel,* 435 P2d 8 (Alaska 1967); *Nuelle v. Wells,* 154 NW2d 364 (ND 1967); *Silesky v. Kelman,* 281 Minn 431, 161 NW2d 631 (1968); *Gelbman v. Gelbman,* 23 NY2d 434, 297 NYS2d 529, 245 NE2d 192 (1969); *France v. APA Transport Corp.,* 56 NJ 500, 267 A2d 490 (1970); *Streenz v. Streenz,* 106 Ariz 86, 471 P2d 282 (1970); *Petersen v. City & County of Honolulu,* 51 Hawaii 484, 462 P2d 1007 (1970); *Gibson v. Gibson,* 3 Cal3d 914, 479 P2d 648, 92 Cal Rptr 288 (1971); *Rigdon v. Rigdon,* 465 SW2d 921 (Ky 1971); *Falco v. Pados,* 444 Pa 372, 282 A2d 351 (1971); *Felderhoff v. Felderhoff,* 473 SW2d 928 (Tex 1971); *Smith v. Kauffman,* 212 Va 181, 183 SE2d 190 (1971); *Plumley v. Klein,* 388 Mich 1, 199 NW2d 169 (1972); *Rupert v. Stienne,* 90 Nev 397, 528 P2d 1013 (1974); *Sorenson v. Sorenson,* 369 Mass 350, 339 NE2d 907 (1975); *Williams v. Williams,* 369 A2d 669 (Del 1976); *Lee v. Comer,* 224 SE2d 721 (W Va 1976); *Wood v. Wood,* 135 Vt 119, 370 A2d 191 (1977); *Fugate v. Fugate,* 582 SW2d 663 (Mo 1979); *Black v. Solmitz,* 409 A2d 634 (Me 1979); *Merrick v. Sutterlin,* 93 Wash 2d 411, 610 P2d 891 (1980); *Elam v. Elam,* 268 SE2d 109 (SC 1980); *Nocktonick v. Nocktonick,* 227 Kan 758, 611 P2d 135 (1980); *Turner v. Turner,* 304 NW2d 786 (Iowa 1981); *Ard v. Ard,* 414 So2d 1066 (Fla 1982); *Uriah v. Martin,* 676 P2d 1366 (Okla 1984).

Although these states repudiated the older view of parental immunity, they did not all replace it with another general formulation. Some followed the Wisconsin rule stated in *Goller v. White, supra,* which retained parental immunity with respect to the exceptions quoted above. Some courts rejected the doctrine entirely; others proceeded more cautiously to hold that at least it had no application to damage actions for a child's injuries resulting from the parent's negligence in driving an automobile. Still other courts retained the older view of parental immunity.[5] A recent collection and classification of the cases is found in 6 ALR 4th 1066-1142 (1981). Without reviewing them in detail here, they show that the underlying and unquestioned assumption of *Chaffin v. Chaffin, supra,* that parental immunity from liability for negligence was a near universal rule in American law, in fact proved to be inaccurate when the proposition was tested in other courts.

The doubtful generality of parental immunity also was recognized in the Restatement (Second) of Torts. The first Restatement, published between 1934 and 1939, did not refer to parental immunity. Summarizing the state of the law in 1977, the Restatement (Second) reported that "[c]onstant criticism of the immunity has led to its erosion by the development of numerous exceptions to it, which have been more or less sporadically recognized by many courts, until there are now very few jurisdictions if any, in which the immunity exists in any complete form." Restatement (Second) of Torts § 895(G), comment (d) (1979). Instead, the Restatement propounded the rule as follows:

"(1)  A parent or child is not immune from tort liability to the other solely by reason of that relationship.

"(2)  Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."

---

[5] *Thomas v. Inmon,* 594 SW2d 853 (Ark 1980) (grants immunity to grandparents acting *in loco parentis); Pedigo v. Rowley,* 101 Idaho 201, 610 P2d 560 (1980); *Gerrity v. Beatty,* 71 Ill2d 47, 15 Ill Dec 639, 373 NE2d 1323 (1978) (grants immunity to school teacher acting *in loco parentis); Skinner v. Whitley,* 281 NC 476, 189 SE2d 230 (1976); *McNeal v. Adm'r of Estate of McNeal,* 254 So2d 521 (Miss 1971); *Oldman v. Bartshe,* 480 P2d 99 (Wyo 1971); *Campbell v. Gruttemeyer,* 222 Tenn 133, 432 SW2d 894 (1968); *Teramano v. Teramano,* 6 Ohio St 2d 117, 216 NE2d 375 (1966).

Restatement (Second) of Torts, § 895G (1979). We reexamine the question in the light of these developments.

## III.

It should be noted that Restatement (Second) of Torts § 895G, quoted above, is phrased in the negative. The text does not state a rule of liability. It denies, in subsection (1), that the relationship of parent and child in itself creates an immunity from tort liability. Subsection (2) recognizes that apart from any immunity, acts or omissions may be privileged or not be tortious between parents and children that might be tortious toward other persons. The distinction between "immunity" and "privileged" or nontortious conduct is not merely verbal. It goes far toward clarifying the issue.

The older immunity doctrine concerned intrafamily litigation. Most, but not all, of the arguments for immunity concerned the undesirable consequences of bringing a minor child's dispute with a parent into court. These were said to include not only "disruption of family harmony" but also the financial consequences of such litigation for other members of the family and the parent's awkward position in defending against a claim for the child's injuries where liability would be covered by insurance. Even these reasons for immunity were not of the same kind. Only the first focused squarely on the disruptive effect of litigation as such. Concern that tort liability would shift family resources to the injured child puts in question the substantive rights of the parties, not their settlement by litigation. Additional arguments adduced in favor of parental immunity really concern the scope of parental duties toward a child and discretion in making decisions and acting in the course of those duties. *See Cowgill, Adm'r v. Boock, Adm'r, supra* at 302 (Rossman, J., concurring).

This confusion of reasons concerning parental duties and privileges with reasons concerning litigation could not withstand analysis when courts began to reexamine parental immunity. The growth of exceptions, including this court's views of the doctrine in *Cowgill* and *Chaffin,* showed that rejection of intrafamily litigation, expressed as "immunity," was replaced by drawing substantive lines for parental liability. If immunity from being sued by one's minor child really rested on the adverse impact of litigation, there was no explanation why it did not bar a child's property or contract

claim; and exceptions for tort claims if the parent's tort was intentional or "wilful," as in *Cowgill,* could be explained only by assuming as a matter of law that this act already had destroyed the "peace and tranquility of the home." *Cowgill, Adm'r v. Boock, Adm'r, supra,* 189 Or at 300, 302. These exceptions and others[6] showed that the court was concerned more with defining the required quality of parental conduct within the domestic setting than with litigiousness, that is to say, with substantive standards of parental duties and privileges more than with immunity from suit. That is the shift of analysis reflected in Restatement (Second) of Torts § 895G.

The shift has yet to run its course. Courts have not abandoned the aim of preserving in the parental relationship an area in which the parent's decisions for a child and the ordinary risks of domestic coexistence are excluded from the standards that govern liability for negligence toward others. Some courts have undertaken to translate this aim into a general formulation.

As already quoted, the Wisconsin Supreme Court in *Goller v. White, supra,* retained parental immunity for the negligent exercise of parental authority over the child and the negligent exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. The California Supreme Court disapproved this test in *Gibson v. Gibson,* 3 Cal 3d 914, 479 P2d 648, 92 Cal Rptr 288 (1971). The court stated:

> "[W]e reject the implication of *Goller* that within certain aspects of the parent-child relationship, the parent has carte blanche to act negligently toward his child. . . . In short, although a parent has the prerogative and the duty to exercise authority over his minor child, this prerogative must be exercised within reasonable limits. The standard to be applied is the traditional one of reasonableness, but viewed in the light of the parental role. Thus, we think the proper test of a parent's conduct is this: what would an ordinarily reasonable and prudent *parent* have done in similar circumstances?[7]

---

[6] Some cases, for instance, denied immunity when the child's injury occurred in the course of the parent's vocational or business activities. *See, e.g. Felderhoff v. Felderhoff, supra* note 4, *Trevarton v. Trevarton,* 151 Colo 418, 378 P2d 640 (1963).

[7] The California court continued:

"We choose this approach over a *Goller*-type formula for several reasons. First, we think that the *Goller* view will inevitably result in the drawing of

3 Cal 3d at 921. The Minnesota Supreme Court first adopted the Wisconsin approach of preserving a remnant of parental immunity in specified areas of parental conduct, *Silesky v. Kelman,* 281 Minn 431, 161 NW2d 631 (1968) but after further experience the court shifted to the California rule. *Anderson v. Stream,* 295 NW2d 595 (Minn 1980).

These are not the only choices. Each has shortcomings. The Wisconsin approach lets courts draw categorical lines as a matter of law, but the lines are difficult to articulate and invite frequent appeals. A defendant might argue, for instance, that injuring a child by negligent driving on the way to school or by carelessly giving it medicine from the wrong container would fall within the stated immunity, while the injured child could maintain that the exception immunizes only the parent's discretionary choice of transportation or of medical treatment, not negligence in carrying out the permissible choice. The California formula, in turn, can be criticized for forcing every case to trial under the "reasonable parent" standard with little opportunity for developing judicial boundaries. *See* Horne, *The Vestiges of Child-Parent Tort Immunity,* 6 UCD L Rev 195, 202, 211-216 (1973). In a third variation, New York simply discarded the immunity doctrine in *Gelbman v. Gelbman,* 23 NY2d 434, 297 NYS2d 529, 245 NE2d 192 (1969), overruling *Sorrentino v. Sorrentino, supra,* without formulating any exceptions. The New York Court of Appeals explained:

> "By abolishing the defense of intrafamily tort immunity for nonwillful torts, we are not creating liability where none previously existed. Rather, we are permitting recovery, previously denied, after the liability has been established."

23 NY2d at 438. Consistent with this premise, later New York cases have denied recovery in cases in which the parent's alleged negligence, such as failure to supervise the child properly, would not be a tort irrespective of parental immunity. *Holodook v. Spencer,* 36 NY2d 35, 364 NYS2d 859, 324 NE2d 338 (1974). *See also Schneider v. Coe,* 405 A2d 682 (Del 1979) (no new cause of action for negligent supervision).

---

arbitrary distinctions about when particular parental conduct falls within or without the immunity guidelines. Second, we find intolerable the notion that if a parent can succeed in bringing himself within the 'safety' of parental immunity, he may act negligently with impunity."

*Gibson v. Gibson, supra,* 479 P2d at 653.

Other courts have abandoned the broad immunity doctrine without committing themselves to an alternative general formula of parental tort liabilities and privileges, expressly leaving this to development in subsequent cases. *See, e.g., Nocktonick v. Nocktonick,* 227 Kan 758, 611 P2d 135 (1980); *Black v. Solmitz,* 409 A2d 634 (Me 1979); *Streenz v. Streenz,* 106 Ariz 86, 471 P2d 282 (1970); *France v. A.P.A. Transport Corp.,* 56 NJ 500, 267 A2d 490 (1970); *Hebel v. Hebel,* 435 P2d 8 (Alaska 1967). Several states have specifically rejected parental immunity as a defense to a child's negligence action in automobile accident cases, either by statute or by judicial decision. *See, e.g. Uriah v. Martin,* 676 P2d 1366 (Okla 1984); *Ard v. Ard,* 414 So2d 1066 (Fla 1982); *Merrick v. Sutterlin,* 93 Wash 2d 411, 610 P2d 891 (1980); *Sorenson v. Sorenson,* 369 Mass 350, 339 NE2d 907 (1975); *Lee v. Comer,* 224 SE2d 721 (W Va 1976); *Smith v. Kauffman,* 212 Va 181, 183 SE2d 190 (1971); *France v. APA Transport Corp., supra,* Conn Gen Stats Ann § 52-572(C) (Supp 1983); NC Gen Stat § 1-539.21 (1981); SC Code Ann § 15-5-210 (Law Co-op 1976).[8] Adding these states to those that have discarded parental tort immunity entirely or with exceptions limited to specified parental functions, it is questionable whether parental immunity in negligent driving cases is the prevailing rule today.

## IV.

■ We agree with the Restatement (Second) of Torts § 895G, *supra,* that the proper inquiry concerns the tortious or privileged nature of a parent's act that causes injury to the child, not a special parental immunity from a child's action for personal torts as distinct from other kinds of claims. The assumption of a general common law rule of parental immunity from negligence actions that was stated in *Cowgill, Adm'r v. Boock, Adm'r, supra,* and repeated without challenge in *Chaffin v. Chaffin, supra,* is negated and superseded by the many decisions since 1964 that have rejected such a general rule.

In some respects, the analysis in this court is simpler than that found in the opinions of other courts that have reexamined the question of parental immunity. The court has

---

[8] The Supreme Court of South Carolina found this statute to be unconstitutional and abrogated the entire doctrine in South Carolina. *Elam v. Elam, supra* note 4 at 23.

held that the presence or absence of liability insurance plays no role in deciding whether liability exists in the first place, nor do speculations whether one or another rule will burden the courts.[9] Instead, we turn to the scope of parents' duties, discretion, and privileges in relation to their children.

The case before us involves injuries to children resulting from a parent's allegedly intoxicated and negligent driving of an automobile. Like other courts that have recently decided such cases, cited above, we also do not find it necessary in this case to state a general formula for deciding what acts or omissions of a parent may be privileged or not be tortious toward a child, though the same act or omission might be tortious toward persons in a different position. It is possible to distinguish between those obligations that a parent owes his or her child specifically by virtue of parenthood from the general duty of ordinary care to avoid foreseeable harm that the defendant would owe to other persons, for instance to someone else's child, under the same circumstances. Negligence suffices to make the parent liable for the child's injury in the second kind of case though perhaps not for substandard performance of specifically parental duties, where a more stringent test such as that stated in *Chaffin v. Chaffin, supra,* may remain proper.

This court has held that the presence of a parental duty imposed by a penal statute does not necessarily imply civil liability. *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978). Duties imposed specifically on parents were Justice Rossman's concern in *Cowgill, Adm'r v. Boock, Adm'r, supra.* Wisconsin's rule makes such a distinction, and it appears that New York's approach invites similar results. It is evident that the parent's responsibility for physical conditions in the

---

[9]

"A person's liability in our law still remains the same whether or not he has liability insurance; properly, the provision and cost of such insurance varies with potential liability under the law, not the law with the cost of insurance.

"Nor are such contentions about the child's loss commensurable with concerns about the processes of litigation."

*Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 552, 652 P2d 318 (1982). Whether liability insurers cover a parent's possible liability for an injury to his or her child is for them to decide, or for legislative regulation. *See* Horne, *The Vestiges of Child-Parent Tort Immunity,* 6 U C D L Rev 195, 208 (1973); Comment, *The Demise of Parent-Child Tort Immunity,* 12 Willamette L J 605, 621 (1976).

home, for food and medical care, for recreation, sports, toys, and games, and for general supervision involve a range of distinct issues that need not be swept within a single verbal formula before they arise. Even a claim that the family automobile is in some respect in unsafe condition, for instance, may call for a different analysis from a claim based on a parent's negligent driving.

■ For a claim based on negligent driving it should make no difference whether the Wisconsin, New York, or California formulation is followed generally for a child's tort claims against a parent. We do not mean that automobile accidents are somehow different from mishaps involving boats, tractors, motorcycles, machinery, or other instruments if the manner of their use would be negligent by the standards a person is bound to maintain toward the world at large or toward someone in the plaintiff's position who is not that person's child. When the allegations of the present complaint are tested under Restatement (Second) of Torts § 895G by criteria of tortiousness and privilege rather than by a doctrine of parental immunity from a child's legal action, there can be no doubt that the complaint survives a motion to dismiss. A driver can hardly claim a "privilege" of driving while intoxicated or otherwise contrary to law. Nor is there any doubt that the complaint alleges negligent driving that would be tortious toward any other passenger who was injured.

Since *Chaffin v. Chaffin, supra,* was decided, the Oregon legislature has repealed the statute that previously required gross negligence for a driver's liability toward guest passengers. We take that to reflect a significant change in the state's policy toward such claims, and we see no reason why it should not be available to the driver's own children as much as to any other child or adult who might be injured in the same fashion. If there are circumstances in which a parent's responsibility toward his or her child might require the parent to transport the child in a manner that might be negligent toward a stranger, a question on which we take no position, they are not presented by the complaints and the motion to dismiss.[10]

---

[10] We refer to such possibilities as a parent's responsibility to rush a sick child to a hospital, which the parent might not have toward some other passenger.

In summary, we conclude that Restatement (Second) of Torts, § 895G states the correct approach to the question of a parent's tort liability toward his or her child. The view of parental immunity referred to by the majority in *Chaffin v. Chaffin,supra,* has been superseded by the reconsideration of this common law issue in many courts immediately following the 1964 *Chaffin* case, a progression which has shown that the immunity doctrine was not as firmly grounded as this court had assumed. When the issue is seen to be whether defendant's alleged conduct was either not tortious or privileged by virtue of the parental relationship, the complaints state a claim that survives a motion to dismiss.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.