Argued and submitted November 16, 1983, affirmed April 18, reconsideration denied
June 29, petition for review allowed August 21, 1984 (297 Or 601)
See 298 Or 171, 690 P2d 505 (1984)

# MOSER,
*Appellant,*

*v.*

# HAMPTON,
*Respondent.*

## (A8102-01142; CA A27147)

679 P2d 1379

Michael A. Greene, Portland, argued the cause for appellant. With him on the briefs was Rosenthal & Greene, P.C., Portland.

Anna J. Brown, Portland, argued the cause for respondent. With her on the brief were I. Franklin Hunsaker, R. G. Stephenson, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., specially concurring.

## RICHARDSON, P. J.

This is a wrongful death action arising from a motor vehicle accident involving two vehicles. Decedent, a passenger in the vehicle driven by her husband, died as a result of the accident. Plaintiff, as personal representative of decedent's estate, seeks recovery from decedent's husband, defendant Clifford Hampton, and from the driver of the other vehicle, defendant Denise Jayne. Plaintiff appeals from a judgment dismissing her complaint against Hampton[1] on the ground of spousal immunity. We affirm.

In the first claim, the complaint alleges that defendants were negligent in the operation of their respective vehicles and were both driving while under the influence of intoxicating liquor. In the second claim, plaintiff realleges the specifications of negligence and intoxication and alleges:

> "The acts of defendant Hampton, as stated above, were reckless and in complete disregard of the safety and well-being of Barbara A. Hampton, deceased."

The third claim alleges:

> "The acts of defendant Hampton as stated above were in complete disregard of the safety and well-being of Barbara A. Hampton, deceased, and amount to willful misconduct."

Plaintiff makes essentially three arguments for reversal of the judgment. She first argues, under various headings, that the doctrine of spousal immunity should be abolished. Second, she contends that if not abolished, the doctrine does not apply in this case, because defendant Hampton's conduct was reckless or willful misconduct. Third, she contends that the surviving beneficiaries of decedent's estate are the real parties in interest and that application of the doctrine denies them a remedy in violation of Article I, section 10, of the Oregon Constitution.

■ Plaintiff invites us, by a variety of cogent arguments, to abolish or severely limit spousal immunity. It is not judicial inertia but binding precedent that compels rejection of the invitation. The Oregon Supreme Court has determined that one spouse is immune from an action by the other for

---

[1] The court entered a final judgment pursuant to ORCP 67B as to defendant Hampton.

nonintentional torts. *Chaffin v. Chaffin,* 239 Or 374, 397 P2d 771 (1964); *Kowaleski v. Kowaleski,* 227 Or 45, 361 P2d 64 (1961); *Smith v. Smith,* 205 Or 286, 287 P2d 572 (1955); *Apitz v. Dames,* 205 Or 242, 287 P2d 585 (1955). As in *Winn v. Gilroy,* 61 Or App 243, 656 P2d 386, *rev allowed* 294 Or 792 (1983), we cannot disregard the controlling precedent.

Plaintiff argues that her complaint states a cause of action for reckless or willful misconduct that is not protected by this doctrine of spousal immunity. The basis of her argument is *Apitz v. Dames, supra,* and *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445 (1950). In *Apitz* the husband intentionally shot and killed his wife and then committed suicide. The wife's personal representative brought a wrongful death action against the husband's estate. The court held that the doctrine of spousal immunity does not prevent a claim for an intentional tort. The exception to spousal immunity was clearly limited to *intentional* torts.

Plaintiff argues that *Cowgill* provides a conceptual basis for recovering in this case. It involved the application of immunity from actions by children against their parents for tortious injury. There, the father, who was intoxicated, refused to allow his 17-year-old son to drive him home and forced the son to ride in the car while he drove. The vehicle was involved in an accident, and both the father and son were killed. The personal representative of the son's estate brought a wrongful death action against the father's estate. In discussing the concept of parental immunity, the court held that there was an exception to the doctrine for willful or malicious misconduct on the part of the parent. The court said:

> "The evidence in the instant action certainly shows that the decedent-father was guilty of willful misconduct." 189 Or at 301.

In *Chaffin v. Chaffin, supra,* the court explained its holding in *Cowgill:*

> "* * * [W]e conclude that an act by a parent, whether described as willful or malicious or wanton, which will pierce the veil of parental immunity, is an act which is done with an intention to injure the child or is of such a cruel nature in and of itself as to evidence not a reasonably normal parental mind, but an evil mind, *malo animo.* * * *" 239 Or at 387.

In discussing the necessary allegations of a complaint, the court said:

"We reach the conclusion then that for a petition of a minor child to state a cause of action against a parent, even under the modified rule of *Cowgill v. Boock,* supra, the complaint must allege facts from which a conclusion can be drawn that the parent committed an act so cruel in its nature as to denote a wicked intent to cause injury to someone." 239 Or at 388.

■ ■ Even assuming that the modified rule of *Cowgill* respecting parental immunity is readily transferrable to spousal immunity, plaintiff's complaint does not state a claim. The complaint alleges in a conclusory fashion that defendant Hampton's acts amounted to reckless or willful misconduct. The specific allegation of defendant Hampton's conduct control over the general allegation of recklessness or willfulness. *Chaffin v. Chaffin, supra.* The acts alleged constitute ordinary negligence, with the additional allegation of intoxication. Those specifications are no more than allegations of gross negligence, which is not sufficient to pierce the veil of immunity.

■ Plaintiff's constitutional argument was answered adversely to her claim in *Smith v. Smith, supra.*

Affirmed.

**VAN HOOMISSEN, J.,** specially concurring.

I concur in the result reached by the majority under the binding precedent cited in the majority opinion.[1] However, at least to the extent of the claim presented here, that precedent should be reexamined.

The spousal immunity rule is a creature of the common law. It is rooted in a legal fiction that a husband and wife are united as a legal entity under the direction and control of the husband. At common law, a wife could not act legally without her husband's consent, nor could she sue him in tort, no matter how egregious the conduct giving rise to her claim.

---

[1] In *Winn v. Gilroy,* 296 Or 718, 681 P2d 776 (1984), the Supreme Court partially abrogated the parental immunity rule in holding that parents are not immune from liability for injury to their children caused by a parent's negligent driving while intoxicated.

Erosion of the fiction began with the passage of Married Women's Acts in the early nineteenth century, which gave married women a legal status apart from their husband's.[2] Concomitant with that erosion was the development of public policy in favor of immunity.[3] *See* Garlick, *Interspousal Tort Immunity: An Analysis of the Law in Oregon and Washington,* 8 Will L J 427 (1972).

Jurisdictions retaining spousal immunity advance a variety of arguments favoring retention, including: (1) unity of spouses on marriage; (2) promotion of family harmony; (3) prevention of collusive or fraudulent claims by spouses; (4) prevention of a large increase in "trivial" claims; (5) adequate redress for injury provided by domestic relations and criminal courts; and (6) the legislative prerogative in abolishing spousal immunity. *See Boblitz v. Boblitz,* 296 Md 242, 462 A2d 506, 513 (1983); Moore, *The Case for Retention of Interspousal Tort Immunity,* 7 Ohio NUL Rev 943 (1980). None of those arguments justifies the denial of a civil remedy on the evidence here.

The common law notion of marital unity gives little support for retention of immunity on these facts. It perhaps served a function in denying legal equality to women, but that injustice has been remedied. *See Apitz v. Dames,* 205 Or 242, 262, 287 P2d 585 (1955); *Davis v. Davis,* 657 SW2d 753, 754 (Tenn 1983).

The arguments that the rule promotes family harmony and that adequate redress is provided through domestic relations and criminal courts fall of their own weight. Certainly criminal or dissolution action by one spouse against the other have no less an effect on family harmony than civil

---

[2] *See* ORS 108.010, *et seq; see also* Oregon Constitution, Art XI, § 5; General Laws of Oregon (Deady), 1845-1864, ch 1, § 30, p 145; 1 Codes and Statutes of Oregon, ch III, §§ 30, 31 (Bellinger and Cotton 1902).

[3] In *Thompson v. Thompson,* 218 US 611, 619, 31 S Ct 111, 54 L Ed 1180 (1910), the Supreme Court refused to interpret the District of Columbia's Married Women's Act as abrogating spousal immunity. Noting the strong public policy favoring family harmony, the court held that a spouse could seek redress for personal injury through the criminal law or the divorce courts, but not by a civil action for damages. The untenability of that holding, as demonstrated in Justice Harlan's dissent in *Thompson,* led several states specifically to abolish spousal immunity for intentional torts. *See, e.g., Brown v. Brown,* 88 Conn 42, 89 A 889 (1914); *Crowell v. Crowell,* 180 NC 516, 105 SE 206 (1920).

litigation. Further, spouses may now sue each other for injury to property, breach of contract and intentional torts. Barring action by an injured spouse serves only to deny that person compensation for injuries sustained through the negligence of another. It is the wrongful act, not the subsequent litigation, that causes most familial disharmony. Indeed, knowledge that one may be sued for committing a negligent tort against one's spouse should serve to increase vigilance and to deter such conduct when spouses interact. *See Immer v. Risko,* 56 NJ 482, 267 A2d 481, 488 (1970). Interspousal tort claims often arise from activity, such as operating an automobile, where the defendant spouse has liability insurance. With the threat of financial ruin removed, it is less likely that disharmony will result from litigation. *See Tubbs v. Dressler,* 435 So2d 792, 793 (Fla 1983) (immunity waived to extent of negligent spouse's insurance).

As for the fear that trial courts will be deluged with trivial claims, there is no more incentive for spouses, absent collusive actions, to bring trivial actions than for the population generally. *See Richard v. Richard,* 131 Vt 98, 300 A2d 637, 641 (1973). Preventing collusive or fraudulent claims is important. *See Smith v. Smith,* 205 Or 286, 311, 287 P2d 572 (1955). Still, that does not justify the absolute bar imposed by the spousal immunity doctrine. Trial judges, attorneys and juries are quick to recognize collusion and fraud. The jury, the polestar of our legal system, should not be underestimated. To say that an action should not be allowed because of the possibility of collusion or fraud is to denigrate the merits of our jurisprudence. *See Coffindaffer v. Coffindaffer,* 244 SE2d 338, 343 (W Va 1978). Further, it is not always in the defendant-spouse's interest to admit liability, especially when a third party is involved, as is common in negligence actions. In that situation, insurance companies may expect that their insureds will cooperate in the defense of claims. To the extent that insurers' liability is increased by allowance of interspousal suits, the increase will be reflected in premiums.

A final justification used for spousal immunity is that any change should be left to the legislature. *See Chaffin v. Chaffin,* 239 Or 374, 390, 397 P2d 771 (1964). The immunity is of common-law origin. Created by the courts, they may properly lay it to rest. As Chief Justice O'Connell stated in his dissent in *Chaffin v. Chaffin, supra,* 239 Or at 391:

"* * * [W]e should abolish the doctrine of spousal and parental immunity in this state under the circumstances of this case. Practically everyone who has written upon the subject concludes that the reasons advanced in the cases for employing these doctrines are unconvincing. * * * In the present case the court does not answer the arguments for the abolition of these doctrines but simply rests its decision on the ground that we should follow precedent and that any change should be made by the legislature. I do not subscribe to this philosophy of judicial inertia. We, not the legislature, are responsible for creating the rule of immunity in these cases; we should be as ready to cast the rule aside if it cannot be defended."

*See also Hungerford v. Portland Sanitarium,* 235 Or 412, 414, 384 P2d 1009 (1963) (abrogating doctrine of charitable immunity).

The American Law Institute favors abrogation of the immunity. Restatement (Second) Torts § 895F (1979), states:

"(1)  A husband or wife is not immune from tort liability to the other solely by reason of that relationship.

"(2)  Repudiation of general tort immunity does not establish liability for an act or omission that, because of the marital relationship, is otherwise privileged or is not tortious."

Comment *f* to the section states:

"The last two decades have witnessed the definite rejection and abolition of the immunity between husband and wife in its entirety in a substantial number of jurisdictions. Numerous courts have followed a dissenting opinion of Mr. Justice Harlan in Thompson v. Thompson, (1910) 218 U.S. 611, and have held that the Married Women's Acts and the position of equality in which they were intended to place the spouses have removed all reason and justification for the immunity, and that one spouse is subject to liability to the other for any tort whether it is to property or to the person. The number of these decisions has been on the increase in recent years and has been encouraged by the spread and general use of liability insurance, particularly in automobile cases. The indications are clear that this is the future state of the law in all states."

Dean Prosser concluded that, in view of recent decisions concerning the doctrine, there is "no possible justification for

it except that of historical survival." Prosser, The Law of Torts, § 122 (4th ed 1971).[4]

Most states have abrogated spousal immunity in whole or in part.[5] Oregon has abrogated it for intentional torts. *Apitz v. Dames, supra.* This is an appropriate time for the Supreme Court to consider abrogating it on this evidence, or completely. Justice Brand put it succinctly in *Apitz v. Dames, supra,* 205 Or at 270:

> "It is the virtue of the common law that as mores change, the law will also change. An old rule is eroded and a new rule attaches to the body by accretion."

---

[4]Many writers have criticized the rule. *See, e.g.,* 1 Harper and James, *The Law of Torts* §§ 8, 10 (1956); McCurdy, *Personal Injury Torts Between Spouses,* 4 Vill L Rev 303 (1959); Young, *A Job Half Done: Florida's Judicial Modification of the Intrafamilial Tort Immunities,* 10 Fla St U L Rev 639 (1983); Brinker, *Interspousal Tort Immunity in Missouri,* 47 Mo L Rev 519 (1982); Querna, *Freehe v. Freehe: The Abrogation of Interspousal Tort Immunity in Washington,* 10 Will L J 287 (1974); *Note,* 30 Kan L Rev 611 (1982); Note, 11 Cap U L Rev 881 (1982); *Note,* 13 Creighton L Rev 423 (1979); *Comment,* 11 Suffolk U L Rev 1214 (1977); *Comment,* 27 Ohio St L J 550 (1966).

[5]Twenty-nine jurisdictions have fully abolished the rule: **Alabama:** *Penton v. Penton,* 223 Ala 282, 135 So 481 (1931); **Alaska:** *Cramer v. Cramer,* 379 P2d 95 (Alaska 1963); **Arizona:** *Fernandez v. Romo,* 132 Ariz 447, 646 P2d 878 (1982); **Arkansas:** *Leach v. Leach,* 227 Ark 599, 300 SW2d 15 (1957); **California:** *Klein v. Klein,* 58 Cal2d 692, 26 Cal Rptr 102, 376 P2d 70 (1962); **Colorado:** *Rains v. Rains,* 97 Colo 19, 46 P2d 740 (1935); **Connecticut:** *Brown v. Brown,* 88 Conn 42, 89 A 889 (1914); **Indiana:** *Brooks v. Robinson,* 259 Ind 16, 284 NE2d 794 (1972); **Kentucky:** *Brown v. Gosser,* 262 SW2d 480 (Kentucky 1953); **Maine:** *MacDonald v. MacDonald,* 412 A2d 71 (Maine 1980); **Maryland:** *Boblitz v. Boblitz,* 296 Md 242, 462 A2d 506 (1983); **Michigan:** *Hosko v. Hosko,* 385 Mich 39, 187 NW2d 236 (1971); **Minnesota:** *Beaudette v. Frana,* 285 Minn 366, 173 NW2d 416 (1969); **New Hampshire:** *Gilman v. Gilman,* 78 NH 4, 95 A 657 (1915); **Nebraska:** *Imig v. March,* 203 Neb 537, 279 NW2d 382 (1979); **New Jersey:** *Merenoff v. Merenoff,* 76 NJ 535, 388 A2d 951 (1978); **New York:** *State Farm Mut. Auto. Ins. Co. v. Westlake,* 35 NY 2d 587, 364 NYS 2d 482, 324 NE 2d 137 (1974); **New Mexico:** *Maestas v. Overton,* 87 N M 213, 531 P2d 947 (1975); **North Carolina:** *Crowell v. Crowell,* 180 N C 516, 105 SE 206 (1920); **North Dakota:** *Fitzmaurice v. Fitzmaurice,* 62 ND 191, 242 NW 526 (1932); **Oklahoma:** *Courtney v. Courtney,* 184 Okla 395, 87 P2d 660 (1938); **Pennsylvania:** *Hack v. Hack,* 495 Pa 300, 433 A2d 859 (1981); **South Carolina:** *Pardue v. Pardue,* 167 S C 129, 166 SE 101 (1932); **South Dakota:** *Scotvold v. Scotvold,* 68 S D 53, 298 NW 266 (1941); **Tennessee:** *Davis v. Davis,* 657 SW2d 753 (Tenn 1983); **Utah:** *Stoker v. Stoker,* 616 P2d 590 (Utah 1980); **Washington:** *Freehe v. Freehe,* 81 Wash2d 183, 500 P2d 771 (1972); **West Virginia:** *Coffindaffer v. Coffindaffer,* 244 SE2d 338 (W Va 1978); **Wisconsin:** *Wait v. Pierce,* 191 Wis 202, 209 NW 475 (1926).