772 P.2d 180

**Barbara DRAPER,**
**Plaintiff–Respondent,**

v.

**Van DRAPER, Defendant–Respondent,**

and

**State Farm Mutual Automobile Insurance Company, Defendant–Appellant.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**
**Counterclaimant–Appellant,**

v.

**Barbara DRAPER,**
**Counterdefendant Respondent.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**
**Cross–Claimant Appellant,**

v.

**Van DRAPER,**
**Cross–Defendant Respondent.**

**No. 17199.**

Supreme Court of Idaho.

March 24, 1989.

Elam, Burke & Boyd, of Boise, for defendant-appellant, State Farm Mut. Auto. Ins. Co. Robert M. Tyler, Jr., argued.

Brauner, Meredith & Coffel, of Caldwell, Idaho, for plaintiff-respondent, Barbara Draper. Byron Meredith, argued.

Defendant-respondent, Van Draper did not file a brief and did not argue.

JOHNSON, Justice.

This is an automobile liability insurance case. The primary issue presented is whether the household exclusion clause contained in the insurance policy was void, allowing a wife (Barbara) to maintain an action against her husband (Van) up to the limits of the policy. The trial court granted summary judgment to Barbara and denied the motions of the insurance company (State Farm) to dismiss, for summary judgment, or for judgment on the pleadings. We hold that Oregon law applies and that the household exclusion is enforceable. We *reverse* the summary judgment of the trial court *and remand with directions to enter summary judgment in favor of State Farm.*

## I.

## THE FACTS AND PRIOR PROCEEDINGS.

Van and Barbara were residents of Nyssa, Oregon. State Farm insured a 1979 automobile (the insured vehicle) owned by Van and Barbara. The insured vehicle was registered in Oregon, and the insurance policy (the policy) was issued by State Farm in Oregon. The policy contained the following provision (the household exclusion):

There is no coverage:

. . . .

2. For any bodily injury to:

. . . .

c. Any insured or any member of an insured's family residing in the insured's household.

The policy also included another provision (the out-of-state coverage):

If an *insured* under the liability coverage is in another state or Canada and, as a non-resident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a. the policy will be interpreted to give the coverage required by the law;

. . . .

On July 29, 1984, Van and Barbara were involved in an accident in Idaho while they were riding in the insured vehicle. Van was driving the vehicle. Barbara was injured in the accident.

Barbara brought this action against Van for damages due to her injuries, alleging his negligence. Barbara also included in the action a claim against State Farm and Van, requesting a declaratory judgment that the household exclusion was void and that there was coverage for her injuries under the policy. State Farm filed a counterclaim against Barbara and a cross-claim against Van, requesting a declaratory judgment that the household exclusion was valid and that State Farm had no liability to Barbara under the policy. Barbara moved for summary judgment against State Farm. State Farm moved to dismiss, for summary judgment, or for judgment on the pleadings with regard to the claim against it by Barbara on the ground that the household exclusion was valid under either Idaho law or Oregon law.

The trial court concluded that Idaho law was applicable and granted summary judgment to Barbara, declaring that the household exclusion was void and that Barbara

could maintain an action against Van up to the limits of the policy. In rendering its decision the trial court stated that "when non-residents from a state recognizing a household exclusion have an auto accident in Idaho, the courts of Idaho shall apply Idaho law for public policy reasons so that such exclusion is held void." The trial court said it applied this "new law" under the modified prospective rule of *Farmers Insurance Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985). The trial court denied State Farm's motions. State Farm appealed all these decisions.

## II.

## OREGON LAW APPLIES.

■ In *Unigard Insurance Group v. Royal Globe Insurance Co.,* 100 Idaho 123, 594 P.2d 633 (1979) this Court held that Idaho law applied in a case that was the converse of this one. In *Unigard* two Idaho residents were involved in an automobile accident in Oregon in which one of them was killed. The case was brought to determine which of three insurance policies would be treated as providing the primary coverage for the accident. After reaffirming the "most significant relationship" test for determining whether Oregon or Idaho law would apply, the opinion reviewed the "choice-influencing considerations." Among these considerations were that Idaho was the place of negotiation and issuance of the policies, the place where the insured automobiles were located, and the domicile, residence, and place of business of the driver and the deceased passenger. The opinion concluded the discussion of this issue by stating:

> Regarding the accident which occurred in Oregon, the needs of the interstate system require that persons who travel from their residence into another state have protection of the laws equal to that afforded to persons who have not crossed state lines. *Rungee v. Allied Van Lines, Inc.,* [92 Idaho 718, 449 P.2d 378 (1968)]. In negotiating and executing the respective insurance contracts, both [of the insurance companies] justifiably expected that the laws of Idaho

would apply. The combined weight of all these considerations leads us to the conclusion that Idaho has the most significant relationship with the transaction and parties here involved. We therefore hold that the district court was correct in applying Idaho law to this action.

100 Idaho at 126–27, 594 P.2d at 636–37.

Here, the trial court acknowledged that Oregon was the principal location of the risk "and the state with the most significant relationship." However, the trial court concluded that "these factors are outweighed by Idaho's public policy concerning family members and uniformity in requiring the same mandatory insurance of persons using Idaho's highways."

This case calls for the application of the choice of law principle established in *Unigard.* We agree with the trial court that Oregon was the state with the most significant relationship to the facts of this case. We are unable to agree that there is any public policy that overrides this choice. Apparently, the trial court considered that the new law declared in its decision was a modification of the "public policy" announced in *Reed.* However, the trial court's analysis breaks down when it attempts to use *Reed* to establish this public policy.

In *Reed* a father and mother sued their son, who had been the driver of a vehicle involved in an accident that caused the death of their other child. The insurance company that insured the vehicle sought to avoid coverage under the policy on the basis of a household exclusion clause similar to the one in this case. This Court held that the household exclusion did not shield the company from liability under the policy, because of the requirements of I.C. § 49–233 (1978). The pertinent portion of this statute, as it existed at the time of the decision in *Reed,* provided:

**49–233. Required Motor Vehicle Insurance.**—(a) Every owner of a motor vehicle which is registered and operated in Idaho by the owner or with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death

or damage to property suffered by any person caused by maintenance or use of motor vehicles described therein in an amount not less than that required by section 49–1521, Idaho Code, and shall demonstrate the existence of any other coverage required by title 49, Idaho Code, or a certificate of self-insurance issued by the department pursuant to section 49–1534, Idaho Code, for each motor vehicle to be registered.

I.C. § 49–233 (1978). In measuring the household exclusion in *Reed* against the requirements of I.C. § 49–223, this Court said:

> However, unlike the statute, the insurance contract contains a clause which *excludes* coverage for household members. This is in spite of the clear legislative mandate ordering coverage extended for damage, injury or death suffered "by any person." This type of exclusion in a liability insurance policy leaves completely unprotected those family members injured when another family or household member is at the wheel in a negligently caused automobile accident. Unless the [company] can show that something shields it from the statutory obligation "imposed by law" to pay damages caused by the policy holder to "any person," the household exclusion clause is flatly and unmistakably in violation of Idaho's compulsory insurance law.

109 Idaho at 851, 712 P.2d at 552.

In declaring the household exception to be unenforceable in *Reed* this Court applied the decision to that action, "all actions pending as of December 31, 1984, and all actions arising subsequent to that date." *Id.* at 854, 712 P.2d at 555. Here, the trial court agreed that this action was not pending as of December 31, 1984, and that it did not arise subsequent to that date. However, the trial court stated that "the analysis does not end with these conclusions." The trial court then weighed "Conflict of Laws, principles and public policy considerations" to determine whether to apply Oregon law or Idaho law. Among the reasons stated by the trial court for its decision to grant summary judgment in Barbara's favor was that "[t]his case is breaking new

ground and making new law on how Idaho deals with non-residents who have accidents in Idaho." The trial court also referred to the out-of-state coverage provision as indicating that State Farm was not entitled to rely on Oregon's interpretation of the household exclusion.

We are not able to accept the public policy considerations that the trial court weighed against the choice of Oregon law dictated by *Unigard*. These public policy considerations are contradicted by *Reed*, rather than supported by it. If the vehicle driven by Van in which Barbara was a passenger at the time of the accident in this case had been registered in Idaho, *Reed* would not have permitted Barbara to maintain an action against Van. The action was not pending as of December 31, 1984, and it did not arise subsequent to that date. There is no public policy of this state that would cause us to treat Barbara more favorably than we would have if the vehicle in this case had been registered in Idaho. A public policy that would be necessary to support that result would favor coverage in accidents involving foreign vehicles over those involving Idaho vehicles. We are unable to accept this as a public policy of this state. Without any public policy to counterbalance the choice of Oregon law under the most significant relationship test, we can only conclude that Oregon law applies here.

With regard to the effect of the out-of-state coverage provision, we point out that the compulsory insurance provided for by I.C. § 49–233 is required only if the vehicle is registered in Idaho. There is no ambiguity in this portion of the statute. We will not search other statutes in the motor vehicle code for evidence of legislative intent, as Barbara would have us do. *Ottesen v. Board of Commissioners of Madison County*, 107 Idaho 1099, 695 P.2d 1238 (1985). If it were not for the household exclusion, the out-of-state coverage provision would be applicable under the Idaho Motor Vehicle Safety Responsibility Act (the Act) to insure that Van satisfies any liability he may have to Barbara or to furnish security as required by the law. I.C.

§ 49–1501, *et seq.* (1980, Supp.1987). This Court has clearly stated that a household exclusion is not in violation of the Act. *Porter v. Farmers Ins. Co. of Idaho,* 102 Idaho 132, 627 P.2d 311 (1981). Therefore, considering the out-of-state coverage provision in conjunction with the Act does not dictate that we reject the choice of Oregon law under the most significant relationship test of *Unigard.*

## III.

## THE HOUSEHOLD EXCLUSION WAS NOT UNENFORCEABLE UNDER OREGON LAW.

■ Until August 1988, Oregon retained spousal immunity for unintentional injury of one spouse caused by the negligence of the other. *Chaffin v. Chaffin,* 239 Or. 374, 397 P.2d 771, 779 (1964); *Moser v. Hampton,* 67 Or.App. 716, 679 P.2d 1379, 1381 (1983), *aff'd by equally divided court,* 298 Or. 171, 690 P.2d 505 (1984); *Heino v. Harper,* 306 Or. 347, 759 P.2d 253 (1988). Under Oregon law before *Heino v. Harper* was decided Barbara could not sue Van for the injuries she sustained in the accident that is the subject of this case. The change of law by the Oregon Supreme Court is usually applied only prospectively. *Dean v. Exotic Veneers, Inc.,* 271 Or. 188, 531 P.2d 266, 272 (1975). We will treat the change of law announced in *Heino* as applying only prospectively. The question then becomes whether, despite spousal immunity under Oregon law as it existed before *Heino,* Barbara may maintain an action against Van to the extent of the liability coverage provided in the policy.

The Oregon appellate courts have on several occasions considered the validity of household exclusion clauses similar to the one at issue here. In *Lee v. State Farm Mutual Automobile Insurance Co.,* 265 Or. 1, 507 P.2d 6 (1973) the Oregon Supreme Court held that a "family-household exclusion" applied to an insured who was injured while she was a passenger in her own automobile that was being driven by her sister-in-law. The court pointed out: "The primary purpose of the family-household exclusion clause is to protect the in-

surer against collusive or friendly lawsuits. ... [T]he need for this exclusion clause is most obvious in cases where the insured had injured a member of his own family and household...." *Id.* 507 P.2d at 8.

In *State Farm Mutual Automobile Insurance Co. v. Baughman,* 57 Or.App. 576, 646 P.2d 102 (1982) the Oregon Court of Appeals commented on *Lee* and *Chaffin* in the context of a case involving a similar household exclusion clause. In *Baughman* a child and a stepchild had been injured when an automobile driven by the man who was their father and stepfather was involved in an accident. The court held that California law was applicable, but also said:

> Although *Lee* involved a claim by a named insured who was a passenger in her own vehicle, we see nothing in the language of the opinion to suggest that the exclusion bears different interpretations depending on the relationship of the claimant to the named insured. Moreover, given the fact that claims by a child against a parent for negligent acts are not favored in this state, [citing *Chaffin*], we see no policy reason for abrogating that immunity by interpreting an unambiguous clause in an insurance policy to afford coverage to a minor child.

*Id.* 646 P.2d at 104.

In *Dowdy v. Allstate Insurance Co.,* 68 Or.App. 709, 685 P.2d 444 (1984), *rev. den.* 298 Or. 172, 691 P.2d 481 (1984) the Oregon Court of Appeals considered the enforceability of a household exclusion clause under Oregon's Financial Responsibility Law (the FRL). In *Dowdy* the plaintiff was injured when she was a passenger in an automobile driven by her sister, who was the insured under the policy. The plaintiff and her sister lived in the same household. In *Dowdy* the court held that *Lee* and *Baughman* were not in point, since they did not address the enforceability of a household exclusion clause under the FRL. The court held that the household exclusion was not enforceable under the FRL. *Id.* 685 P.2d at 449.

Recently, the Oregon Supreme Court has addressed the enforceability of a household

exclusion under the FRL. *State Farm and Casualty Co. v. Jones*, 306 Or. 415, 759 P.2d 271 (1988). In *Jones* a woman was injured while riding as a passenger in her own automobile while it was being operated by a driver with her permission. There was no family relationship between the injured woman and the driver, and they did not live in the same household. The basis for applying the household exclusion was that the injured party was the insured. By the terms of the household exclusion, it excluded coverage for "any insured" as well as "any member of an insured's family residing in the insured's household." The same is true of the household exclusion in this case. In *Jones* the court construed prior decisions concerning household exclusion clauses decided by the appellate courts in Oregon, including *Lee* and *Dowdy*. The court held that the FRL required the policy to provide liability coverage for bodily injury to an insured that is occasioned by a permissive user of an insured's automobile.

As we read these decisions of the Oregon appellate courts, spousal immunity remained intact until *Heino v. Harper* was decided last year. The decisions that have held household exclusion clauses to be unenforceable under the FRL have not involved a spouse who was injured by the unintentional, negligent act of the other spouse. We note that in April 1984 the Oregon Supreme Court unanimously abolished parental immunity. *Winn v. Gilroy*, 296 Or. 718, 681 P.2d 776 (1984). Eight months later in *Moser* the same court upheld spousal immunity, although by an equally divided vote affirming the decision of the court of appeals. This convinces us that under Oregon law prior to *Heino v. Harper* the household exclusion was enforceable where one spouse was injured by the negligence of the other spouse. We find no precedent in Oregon prior to *Heino v. Harper* that would render spousal immunity ineffective to the extent of the insurance coverage provided by the policy here.

## IV.

### CONCLUSION.

The summary judgment of the trial court is reversed. The case is remanded with directions to enter summary judgment in favor of State Farm.

Costs to appellant.

No attorney fees on appeal.

SHEPARD, C.J., and BAKES, and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

### I

Contrary to the stance taken by Justice Johnson, the issue presented here is not whether the wife, Barbara Draper, can maintain a negligence action against her husband. More simply, that issue has not been decided in the court below, and is not before us. Moreover, that issue in all likelihood will not come before us. That issue became *stare decisis* in this state fourteen years ago in *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975). In that action the plaintiff, Betty Rogers, accompanied her husband, Peter Rogers, on a motor trip from San Francisco to Yellowstone Park. The couple had an infant son with them. The trip was authorized by the Yellowstone Park Co., owner of the vehicle, and insured as such against claims of liability. Peter did all of the driving, and having apparently over-taxed his stamina, dozed or fell asleep while driving. The car left the road, and Betty was injured, and filed suit against Peter and his employer, the Yellowstone Park Co. The trial court concluded that under the then present state of the law of community property any recovery by Betty would belong to the community comprised of Peter and Betty, thus inuring to the benefit of the negligent Peter. A summary judgment in favor of Yellowstone was entered.

On appeal the issues raised in defense were various, but the fundamental issue was whether Betty could maintain a negligence action against Peter, whose negligence, if any, might be vicariously in turn attributable to his employer, Yellowstone Park Co. The Court issued its opinion on July 25, 1974. Responsive to a petition, rehearing was granted, and a second opin-

ion for the Court entered almost a year later, May 5, 1975. The case was indeed given thorough consideration.

A review of the opinions discloses that the Court carefully weighed all of the policy contentions, carefully reviewed the case law from other jurisdictions—as well as a substantial body of Idaho law—and made the determination to abolish the doctrine of interspousal tort immunity, as one member of the court in dissent so worded it, and as it since has so been generally referenced. Justice McFadden, the author of the Court's *Rogers* opinions, in writing after rehearing referred to the doctrine of interspousal immunity in speaking to "the purpose of abrogating [it]." 97 Idaho at 25, 539 P.2d 577.

Significantly, as one approaches *Draper v. Draper*, there was in *Rogers* no issue of insurance contract construction or interpretation. There was just that same exact issue of spousal immunity, although more broadly excluded from coverage as "household immunity."

## II

Four years after *Rogers* the Court was presented with *Unigard Ins. Group v. Royal Globe Insurance Company*, 100 Idaho 123, 594 P.2d 633 (1979). Significantly, in this case, as was not so in *Rogers*, there was no involvement of a tort victim suing the negligent tort feasor. That suit would follow later in another state. Unigard Ins. Co. filed the suit against Royal Globe Ins. Co. for the sole purpose of determining the susceptibility of three policies of insurance to which resort would be made in the event a potential tort action might be brought thereafter. The declaratory judgment action, in Idaho, was filed in January 1976. The tort action was filed in Oregon a year and a day later.

The parties stipulated prior to trial to the potential exposure of three policies and to the underlying facts which would produce the Oregon tort action. But, as was made abundantly clear by Justice McFadden in authoring this Court's unanimous opinion, that:

[O]nly the rights and duties of the insurance companies *vis a vis* each other on these three policies are before us ... involved here is not an action in tort to establish liability, but rather a declaratory judgment involving interpretation of written contracts of insurance to determine priorities among different policies ... the rights and liabilities of the two insurance companies involved in this action arise out of written contracts of insurance, not out of tort doctrines of negligence or imputed negligence.

100 Idaho at 125–126, 128, 594 P.2d at 635–636, 638.

A holding in *Unigard* that Idaho law applied to the contracts of insurance was amply fortified and so far as is known has never been questioned. The contracts of insurance were sold in Idaho to Idaho residents. That holding was so patently required that the Court did not bother to consider what might be the law in Oregon—the place in which the two Idaho citizens were journeying when the fatality occurred to one which may have been the fault of the other.

Significantly, the issue there decided has no viable effect on the issue presented in *Draper v. Draper*. For one thing, one of the insurance companies argued on appeal that the stipulation of facts was in error and should be disregarded. That issue was turned away, the Court saying:

While appellant's contentions are not without merit, they were not raised before the trial court. We have carefully reviewed the trial record and the trial briefs submitted by both sides, and we conclude that the issue was not brought before the trial court. Issues not raised below will not be considered by this court for the first time on appeal. *Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975); *Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973); *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968). Appellant is therefore bound by its stipulation that both of its policies provide liability insurance coverage to Trabert.

100 Idaho at 127, 594 P.2d at 667. In addition, it is to be kept firmly in mind that

not involved were any statutes in the Idaho Motor Vehicle Financial Responsibility Law, Title 49, ch. 12, Idaho Code. That is indeed important in assessing the nonapplicability of *Unigard* to *Draper v. Draper*.

III

Another inter-familial immunity abrogation case which is deserving of attention is *Farmers Ins. Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1986). Moreover, it along with *Rogers v. Yellowstone Park Co.*, plus proper consideration of the policy here at issue, as viewed with proper regard to Idaho statutory law examined in *Rogers* will lead to the only proper conclusion in this case. It is the same conclusion drawn by Judge Fuller in his carefully thought out memorandum opinion, to which considerable deference is due.

In the *Reed* case, Justice Huntley in authoring the Court's opinion first noted that well over half of the fifty states now allow intrafamily negligence actions. Included in those states are our immediate neighbors of Montana, Oregon, Washington, and Wyoming. Masterfully weaving his thread, he then went to the paramount crux of this transition in the law, namely state laws *requiring* liability insurance. In Idaho that statute was then I.C. § 49–233, and as did Justice Huntley, I will set it out and some of the ensuing language which so well portrayed the logic of its application:

> The relevant statute in the case at bar reads:
>
> **49–233. Required Motor Vehicle Insurance**—(a) Every owner of a motor vehicle ... shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered *by any person* caused by maintenance or use of a motor vehicle.
>
> I.C. § 49–233 (1978) (emphasis added). Farmers Insurance Company issued a policy to the Reeds, and its language tracks almost exactly the 'any person' language in the statute. The company agreed:

> To pay all damages the insured becomes *legally obligated* to pay because of: (A) bodily injury *to any person* ... arising out of the ownership maintenance or use ... of the described automobile or non-owned automobile. (Emphasis added.)

However, unlike the statute, the insurance contract contains a clause which *excludes* coverage for household members. This is in spite of the clear legislative mandate ordering coverage extended for damage, injury or death suffered 'by any person.' This type of exclusion in a liability insurance policy leaves completely unprotected those family members injured when another family or household member is at the wheel in a negligently caused automobile accident. Unless the defendant can show that something shields it from the statutory obligation 'imposed by law' to pay damages caused by the policy holder to 'any person,' the household exclusion clause is flatly and unmistakably in violation of Idaho's compulsory insurance law.

Traditionally, insurance companies have been relieved from their obligation 'imposed by law' to compensate by the intrafamily immunity doctrine. If there is intrafamily immunity in Idaho in the contest of automobile accidents, then the household exclusion clauses are valid. If there is no intrafamily immunity shield, the household exclusion clauses are invalid statutorily and as against public policy.

We will first explain why we decline to implement the immunity in this narrow area. Thereafter, we will examine whether the statute and public policy completely invalidate the exclusion clause.

Essentially, two factors support the intrafamily immunity: (1) preservation of family harmony and (2) prevention of collusion or fraud. *Pedigo* [*v. Rowley*], 101 Idaho [201] at 203, 610 P.2d [560] at 562 [ (1980) ]. It was feared that family harmony in certain areas would be disrupted because of the acrimony engendered when family members are pitted as adversaries against each other, and be-

cause a judgment might erode the family financial base. But today, the presence of mandatory automobile liability insurance completely undercuts that rationale in this area. Thus, we feel that allowing an action, and subsequent recovery to the extent of the coverage under the automobile liability insurance, will enhance rather than disrupt family harmony. The Oklahoma Supreme Court recently adopted this approach in responding to the family disharmony argument:

> Disruption of domestic tranquility is much less likely where the minor child can be compensated for his losses under the parent's liability coverage, which additionally eases any financial strain on the family resulting from the accident.

*Unah* [*v. Martin*], 676 P.2d [1366] at 1369 [ (Okl.1984) ]. The court added:

> While the existence of liability insurance—in this case compulsory coverage—does not create liability, its presence is significant, and cannot be ignored in the determination of whether our courts should continue to deprive unemancipated minors the right enjoyed by all other individuals.

. . . .

The second major reason advanced by insurance companies in favor of applying the intrafamily immunity doctrine is prevention of fraud or collusion. This Court disposed of that argument in *Thompson* [*v. Hagen,* 96 Idaho 19, 523 P.2d 1365 (1974) ], and in *Rogers v. Yellowstone Park Company,* 97 Idaho 14, 539 P.2d 566 (1975), when we declined to let insurance companies hide behind the interspousal immunity shield.

Implicit in respondent's argument is that the judicial system is inadequate to safeguard against collusion in tort actions between spouses. We reject this contention, for courts in this state presently weed out fraud and collusion in other cases not involving actions between spouses.

We find nothing unusual or peculiar in interspousal suits to frustrate the capability of the judicial system to avoid or anticipate such abuses.

*Id.* at 17, 539 P.2d 569. *See also, Mutual of Enumclaw Insurance Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982).

For the reasons expressed above, we decline to preclude intrafamily automobile negligence actions by judicially broadening the family immunity doctrine in Idaho. Therefore, the liability of the insurance companies to pay on their automobile liability insurance policies remains at 'liability imposed by law.' I.C. § 49–233 (1978).

*Farmers Ins. Group v. Reed,* 109 Idaho at 851–852, 712 P.2d at 552–553.

The *Reed* opinion also brought back to mind *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974), another notable case in the same vein as *Rogers* and *Reed.* Here the Court struck down the Idaho Guest Statute, I.C. § 49–1401. That statute had been a blight on the Idaho horizon since its enactment in 1931. The title of the House Bill which became I.C. § 49–1401 is intriguing: AN ACT *RELEASING* OWNERS OF MOTOR VEHICLE FROM RESPONSIBILITY FOR INJURIES TO PASSENGERS THEREIN.[1]

In concluding the Court's proper disposition of the Guest Statute immunity there is not only the well-stated, precedent-documented opinion of Justice McQuade, concurred in by Justices Donaldson and Bakes, but also the separate majority opinion of Justice McFadden wherein he concluded that the guest statute was inconsistent with Idaho's then newly adopted comparative negligence. Justices Donaldson and Bakes concurred in Justice McFadden's opinion as well as with Justice McQuade. Justice McQuade correctly pointed out that in the event of such an inconsistency, the latter-enacted statute prevails over the earlier. 96 Idaho at 26, 523 P.2d at 1372.

---

**1.** While one might think that in 1930 a guest was awarded a substantial verdict against his driver, no reported case so shows in Volumes 48, 49, and 50 of the Idaho Reports.

## IV

In my view it is not difficult to analyze and determine *Draper v. Draper*. *Unigard* has no application whatever. *Rogers* does. *Reed* does. *Thompson* does as a matter of legal philosophy and judicial policy. (Hardly ever does an appellate court produce two majority opinions reaching the same result.) Moreover, *Draper v. Draper* is to an extent *sui generis*. The complaint filed in an Idaho district court, as amended, was basically predicated upon two claims. The first was the negligence claim which Barbara Draper filed against her husband —which remains in abeyance while we consider the related, and, to a large extent integrated, claim that State Farm Mutual is responsible for any damages which may be recovered—an obligation of which presumably it has given notice it will not respect. The tort claim is not before us on this review.

State Farm's answer has joined issue in its answer to Barbara Draper's complaint on the insurance issue. It has attached a copy of its policy. On page 6 thereof, almost side-by-side are two interesting provisions. Under the heading THERE IS NO COVERAGE follows 1. (not involved here), and then 2., which is, and continues the theme of declaring no coverage as follows:

2. FOR ANY BODILY INJURY TO

    a. ...

    b. ...

    c. Any insured or any member of an insured's family residing in the insured's household.

But, then there is on the right side of the page, a heading in letters half the size of the headings on the left. This diminutive heading is captioned: MOTOR VEHICLE COMPULSORY INSURANCE LAW OR FINANCIAL RESPONSIBILITY LAW. Part number 1 thereof is subcaptioned Out–of–State–Coverage. In ever yet diminishing sized print it provides:

    a. the policy will be interpreted to give the coverage required by law; and

    b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of car insured under this policy.

The district court, Judge Fuller, obviously made a close and painstaking examination of the sixteen page policy which State Farm Mutual attached to its Answer to Second Amended Complaint. Although State Farm Mutual's pleadings specifically raised the "household exclusion," Judge Fuller found in the policy itself a provision which he concluded brought the policy terms into compliance with the requirements of Idaho Statutory law. In his memorandum decision and order he ruled: "In the alternative, this court finds that the policy contains a provision accepting the coverage required by out-of-state compulsory insurance laws." R., p. 71. Judge Fuller was on sound ground, as has been shown above by noting the specific language of the policy. That language tells the insured in no uncertain terms that if he travels into Idaho, and any of the other forty-nine states, *he is in compliance* with the compulsory insurance laws of those fifty states. Should he drive to Alaska and necessarily travel through Canada, *he is in compliance* with Canadian laws.

It is logical to believe that Oregon-issued State Farm Mutual liability policy provisions were incorporated to accommodate the requirement of I.C. § 49–1211(1)(b) which states that the insurance carrier of a non-resident of Idaho who has not registered his vehicle in Idaho must "agree in writing that the policies *shall be deemed to conform with the laws of Idaho* relating to the terms of motor vehicle liability policies issued in Idaho." The policy is a writing, and it clearly is binding on State Farm Mutual, not just as to Idaho law, but as to any state the Oregon resident policy holder may enter.

That the State Farm Mutual policy so provides is not remarkable. The policy was sold to Van Draper, 713 Locust Ave., Nyssa, Oregon. While it may have been within the contemplation of the parties in selling and buying the policy that by reason of Nyssa's close proximity to Idaho, there would be frequent trips into Idaho, the particular provision is part of a printed

policy. Thus it is more likely that State Farm Mutual was aware that people in the West are prone to travel, and much of that travel is interstate, and practically all of it is by motor vehicle. Be that as it may, the provision in the policy clearly states that there is out-of-Oregon coverage, and the nature of that coverage is "to give the coverage required by law" of the state which its insureds (here, the Drapers) may decide to enter. It is a commendable policy provision.

Idaho has had since 1947, a statute which requires motor vehicle liability policies to contain such a provision. I.C. § 49–1521, which was in effect at times here pertinent, states:

(b) Such owner's policy of liability insurance.

1. ...

2. *Shall insure the person named therein and any other person, as insured,* using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, *against loss from the liability imposed by law for damages arising out of the ownership,* maintenance or use of such motor vehicle or motor vehicles *within the United States of America or the Dominion of Canada* ...

Idaho statutory law is thus seen requiring that a policy show that it affords coverage nationwide, *i.e.,* under the laws of 50 states (and Canada), where the Oregon policy is made applicable in Oregon, and also in of the other forty-nine states and Canada, the proviso being that it will "give the coverage required by law."

Idaho statutory law, as judicially amended, gives coverage to a wife who is injured by the vehicular negligence of her husband, *Rogers,* 97 Idaho 14, 539 P.2d 566 and, although not applicable, to parents whose minor child has been killed by the vehicular negligence of one of their other children, *Reed,* 109 Idaho 849, 712 P.2d 550.

Judge Fuller's decision should be affirmed. Moreover, when he discusses the Idaho public policy, he is also on sound ground. The point here is, however, that such policy was performed for him by this Court's opinions, in *Rogers, Reed,* and *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365. Judge Fuller in discussing public policy is only "guilty" of correctly applying it to this particular set of circumstances, which is to say that "if guilty" of any error it is in deciding the issue differently than Justice Johnson and those who have readily joined his opinion, decide it. Probably there is here, as in many cases, room for diverging views. There were those, including some members of this Court, who voiced their discontent with the *Rogers* and *Reed* decisions. Yet those decisions still stand, and are there to be followed or to be overruled.

I see no reason to get overly excited concerning Justice Johnson's use of *Unigard.* It simply does not fit into this scenario. The contract here involved is a contract entered into in Oregon, but it was specifically made subject to the compulsory motor vehicle responsibility law of Idaho, and forty-nine other states and one foreign country as well.

Mrs. Draper's potential claim for relief arose when she was injured, July 29, 1984. She had two years in which to file it, or face the bar of the statute of limitations. When she did file her claim for relief it became an action, "in its legal sense a suit brought in court." *Black's Law Dictionary, 26* (5th ed. 1979). At that time it became a pending action. Prior to that time it was nothing but a potential claim upon which she might or might not bring an action. Once filed, however, it was an action that arose out of the factual background alleged in her complaint.

Notwithstanding the advent of Idaho's adoption of the "federal rules" of civil procedure, the authors of the opinions in *Thompson, Reed,* and *Rogers* indulged in loose terminology as to actions pending, which was correct, but also as to "actions arising in the future, actions arising after this decision becomes final, and as to actions subsequent to December 31, 1984." Actions simply do not arise. If a complaint is filed, an action will become pending.

A cause of action does not arise, it *accrues* when in tort law, there has been a

## 984

negligent act of commission or omission. It is a right which a party has to institute a judicial proceeding. *Black's Law Dictionary*, 201 (5th ed. 1979).

Barbara Draper had a cause of action on which she subsequently filed suit on June 17, 1986. This was subsequent to the *Reed* decision's declared date of applicability, whether it be the date that decision was issued, or the earlier date of December 31, 1984, when an opinion was issued which was withdrawn. In either event, her suit was filed in point of time after the *Reed* decision, and in no way can it be seriously urged that she was seeking to obtain a retroactive application of *Reed*.

Moreover, her suit was not predicated upon *Reed's* holding, but upon the premise that she was injured in Idaho and State Farm Mutual policies of insurance provided that it accepted controlling Idaho law whenever the insureds under the policy might happen to be injured in Idaho. It was, as Judge Fuller observed, a case of first impression making new law in Idaho.

A final question: Is an out-of-state motorist traveling in Idaho subject to the laws of Idaho? The answer is, of course, in the affirmative. The traveler is bound by the Idaho rules of the road. He can be held guilty of criminal conduct for some violations.

As with any Idaho resident, he is required to have liability insurance, and if he does not, he is there, too, subject to criminal prosecution. It satisfies Idaho that his proof of having such liability insurance may consist of evidence of an Oregon certificate of insurance. This is all as it should be. Making it even better, his Oregon-issued policy gives recognition to its acceptance that when the Oregon driver is in Idaho, or any other of the fifty states, the Oregon-issued policy will give the coverage required by the out-of-Oregon state.